IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Criminal Action No. 5:11-cr-31

GREGORY LYNN SANDRETH,

    Defendant.

## REPORT AND RECOMMENDATION DEFENDANT'S MOTION TO SUPPRESS BE DENIED

This matter comes before the Court on Defendant's Motion to Suppress Statements and Search Warrant filed September 8, 2011.[1] The Court held an evidentiary hearing and argument on Defendant's Motion to Suppress on September 19, 2011. The United States of America (hereinafter "USA") appeared by Andrew R. Cogar, Esq., in person. Defendant appeared in person and by his counsel Patricia Valentino Kutsch., in person. The USA tendered the testimony of witnesses Corporal L.M Roberts, Corporal David L. Stafford, and Task Force Officer Timothy Edward Motte. Defendant tendered the testimony of Patrolman Scott Cook and ATF Special Agent Price. No other testimony was taken nor was any other evidence adduced.

### I. Introduction

A.     Background

Defendant was indicted on one count of unlawful possession of a firearm by a drug user and one count of making a false statement during the purchase of a firearm. Defendant now

---

[1] Dkt. No. 19.

moves this Court to suppress statements made to police officers and evidence obtained during search of Defendant's premises pursuant to a search warrant. See Def.'s Mot. Supp., Pg. 1 (Dkt. 19).

B.   The Motions

   1.   Motion to Suppress.[2]

C.   Recommendation

I recommend Defendant's Motion to Suppress be **DENIED**.

Defendant's Motion to Suppress should be denied as to the statements made by Defendant to police officers on February 19, 2011 because the officers obtained valid consent to conduct a search.

Defendant's Motion to Suppress should be **DENIED** as to the search of Virginia Sandreth's purse on February 19, 2011 because Defendant lacks standing to challenge the search.

Defendant's Motion to Suppress should be **DENIED** as to statements made by Defendant on March 30, 2011 because Defendant made the statements voluntarily and was not in custody at the time he made the statements.

Defendant's Motion to Suppress should be **DENIED** as to the evidence seized in the search of Defendant's premises on March 30, 2011 because the "fruit of the poisonous tree" doctrine is not implicated when the search is made pursuant to a valid search warrant.

---

[2] Dkt. No. 19.

## II. Facts

A. The February 19, 2011 Traffic Stop

On February 19, 2010, West Virginia State Police Corporal L.M. Roberts was contacted by ATF Special Agent Ted Hoover on his cell phone and informed that the owner of a maroon-colored truck was suspected of being a member of the Barbarian Motorcycle Club who Agent Hoover wanted to identify. After being told that the vehicle was on the move, Corporal Roberts drove to the area the truck was spotted and observed the driver of the truck making an illegal left turn onto Route 2 in Weirton, West Virginia. Corporal Roberts then activated his emergency lights and pulled the truck over, which was being driven by Virginia Sandreth while Gregory Sandreth, the owner of the vehicle, was in the passenger seat. Corporal Roberts then asked Mrs. Sandreth to step outside of the vehicle where he wrote her a warning for making the illegal left hand turn. He asked her whether there were any weapons or drugs in the vehicle and if he could have permission to conduct a vehicle search. Mrs. Sandreth responded that there were no illegal drugs or weapons in the truck and that Corporal Roberts could search it, although she advised him that she was not the owner of the vehicle. Corporal Roberts then asked Mr. Sandreth for permission to search the vehicle and he consented to the search. Corporal Roberts asked him to step outside the vehicle, and he noticed that Mr. Sandreth had two knives on his person, both attached to his belt, with one resting parallel to his back.

Corporal Stafford heard about the stop over the radio and arrived on the scene to help with the search. Corporal Roberts found a "one hitter pipe" in the pocket of Defendant's vest. Defendant admitted the pipe was his and also advised there was cocaine in the vest pocket, although the officers never found the cocaine. Corporal Stafford also found Mrs. Sandreth's

3

purse in the middle bucket seat area. Inside of the purse he found a clear vial with white powdery residue inside, which was later identified as cocaine. The Defendant stated it belonged to him. Defendant was then arrested for possession of a controlled substance and carrying a concealed deadly weapon.

B. The March 30, 2011 Search and Interview of Defendant

On March 30, 2011, ATF agents obtained a search warrant for Defendant's residence. Before executing the warrant, the officers involved met to discuss the plan for its execution, and they agreed to approach the Defendant first at the American Legion in Follansbee, West Virginia. The local officer went inside and asked the Defendant if he would step outside, and once there, he was advised there was a warrant to search his residence. He was advised that he was not under arrest, but the officers asked if he would accompany them back to his home where they would conduct the search. The Defendant agreed.

Once at the residence, Defendant let the officers inside by opening up the door with his key. There were six or seven officers conducting the search inside the house and one or two more outside the residence, including Task Force Officer Motte, ATF Special Agent Hoover, Special Agent Heather Young, Corporal Keith Storer from the Pennsylvania State Police, Special Agent Barbour with the Drug Enforcement Agency in Weirton, Special Agent Price, and a local officer.[3] At least one officer was uniformed, and all other officers displayed some sign identifying their roles in law enforcement. During the course of the search, officers recovered three firearms and various drug paraphernalia.

While the search was being conducted, Defendant wanted to know what was going on.

---

[3]Names are spelled phonetically.

He spoke with Agents Hoover and Motte at the dining room table in his residence for between fifteen and twenty minutes and he was told that the current search stemmed from the search of his car and subsequent arrest back in February 2011. The officers again informed him that he was not under arrest and was free to leave at any time. During the interview, the Defendant made admissions about his personal use of marijuana and cocaine and also admitted to owning the drug paraphernalia seized at his residence.

### III.     **Motion to Suppress**

A.     Contentions of the Parties

In support of his Motion to Suppress, Defendant argues that his statements to the state troopers should be suppressed because the officers improperly expanded the scope of the traffic stop and because his consent to search was not voluntary. Defendant also contends that the search of his wife's purse was an improper Fourth Amendment violation because there was no consent to search the purse and it was not searched incident to a lawful arrest. Defendant next contends that the statements he made to officers on March 30, 2011 were obtained in violation of his Fifth Amendment rights because the officers conducted the interview without advising him that anything he told them could be used as evidence against him. Finally, the Defendant contends that the items seized during the search of his residence on March 30, 2011 should be suppressed because it is "fruit of the poisonous tree" as the product of the allegedly illegal search conducted on February 19, 2011.

In opposition, the Government contends Defendant's Motion to Suppress should be denied because the traffic stop did not infringe any of Defendant's rights. The Government contends that the officer's questions about the presence of illegal items in the truck did not

violate the Fourth Amendment and that they received valid consent to search the vehicle. Next, the Government contends that Defendant had no legitimate expectation of privacy in his wife's purse so he lacks standing to challenge its search. The Government contends that the statements Defendant made to law enforcement officers on March 30, 2011 were not obtained in violation of his Fifth Amendment rights because he was never in custody. Finally, the Government contends that the items obtained pursuant to the March 30, 2011 search are not "fruit of the poisonous tree" because there they are not the product of previous illegal conduct.

 B.     Discussion

i.      The February 19, 2011 Traffic Stop

The first issue is whether statements made by Defendant to Corporal Roberts must be suppressed because they were elicited during an illegal stop. As a general rule, the Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Even the "[t]emporary detentions of individuals during the stop of an automobile by the police...constitutes a 'seizure.'" Whren v. United States, 517 U.S. 806, 809 (1996). However, when determining whether a seizure is unreasonable, the Fourth Circuit has noted that "[o]bserving a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008). During a routine traffic stop, "a police officer may ask questions unrelated to the purpose of the stop, provided that the unrelated questioning does not extend the encounter beyond the period reasonably necessary to effectuate the purposes of the lawful detention." United States v. Digiovanni, No. 10-4417, 2011 WL 3000496, at *6 (4th Cir. July 25, 2011) (internal quotation omitted). Accord United States v.

6

Mason, 628 F.3d 123, 130-33 (4th Cir. 2010) (finding no constitutional violation where questioning of the driver and passenger on matters unrelated to the stop for a window-tint violation led to their arrests on drug charges and time from stop to arrest was around 18 minutes).

In this case, Corporal Roberts observed the Defendant's truck make an illegal left hand turn onto Route 2 in Weirton. Because Corporal Roberts clearly observed a traffic violation, he had probable cause to make a routine traffic stop. Although at the suppression hearing Corporal Roberts stated that he was contacted by ATF Special Agent Ted Hoover who told him he was interested in identifying Mr. Sandreth, even if this traffic stop was pretextual, the pretextual nature of the stop has no bearing on the suppression issue here. The Fourth Circuit has held that even if a reasonable officer would not have made the stop absent larger suspicions or investigative purposes, as long as the officer had an objective right to stop the vehicle, the officer's subjection motivation is of no import, and the seizure of evidence of a more serious offense will not be suppressed on the ground that the stop was pretextual. United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993). Accord Ohio v. Robinette, 519 U.S. 33, 35 (1996). Finally, Corporal Roberts only extended the stop for a few extra minutes in order to ascertain whether there were any illegal drugs or weapons in the car and whether he could have their permission to perform a search. As already noted above, Fourth Circuit case law is clear that this does not impermissibly extend the encounter. Digiovanni at *6; Mason at 130-33. The only question thus remaining with regard to the February 19, 2011 traffic stop is whether the warrantless search of the vehicle was impermissible because it was not validly consented to.

A warrantless search, and the evidence obtained therefrom, may only be valid if the

search falls within one of the narrow and well-delineated exceptions to the Fourth Amendment's warrant requirement. United States v. Stevenson, 396 F.3d 538 (4th Cir. 2005); United States v. Matthews, 591 F.3d 230 (4th Cir. 2009). "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' [however,] the warrant requirement is subject to certain exceptions." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). A specific exception to the warrant requirement of the Fourth Amendment permits officers to perform a warrantless search if it is conducted pursuant to valid consent. Scneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Trulock v. Freeh, 275 F.3d 391, 401 (4th Cir. 2001). In order for consent to be valid, it must be knowing and voluntary judged by the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 557 (1980); United States v. Buckner, 473 F.3d 551, 553-55 (4th Cir. 2007). In taking a totality of the circumstances approach, the Fourth Circuit considers a range of factors. In United States v. Elie, 111 F.3d 1135, 1144 (4th Cir. 1997), the Fourth Circuit stated: "it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the condition under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location and time of the encounter)."

In this case, the totality of circumstances indicate that Defendant's consent was knowing and voluntary. In considering the characteristics of the accused, this Court notes that Defendant is a middle-aged man with previous experience serving with the United States Military. Officers at the suppression hearing testified that he was courteous towards the officers while they were conducting their searches. Defendant also has also previously been charged with a misdemeanor concealed weapons charge, so he is not entirely ignorant of the criminal process. While the

8

record is silent as to his intelligence and education, this Court finds that the record indicates his age, maturity and experience weigh in favor of knowing and voluntary consent. In addition, the condition under which the consent to search was given indicates that it was knowing and voluntary. In this case, the officer asked both Mr. and Mr. Sandreth if he could have their consent to search the vehicle. Nothing about Corporal Roberts' conduct indicates that this request for permission was coercive. He wrote a written warning for the underlying offense as he would normally do, then he made as simple request for permission to search, as he explained he has done in many other stops. No evidence was adduced indicating he used a loud or harsh tone, that he had a weapon drawn, or that he had put either of the parties in handcuffs at the time. While it is true that he did not inform them that they had the right to refuse consent, case law has clearly established that the Government is not required to show that individuals were told or otherwise knew they had a right to refuse consent. Ohio v. Robinette, 519 U.S. 33, 39-40 (1996). Other circumstances involving the condition under which the consent was given indicate it was knowing and voluntary. The stop occurred at around 8:00 on a Saturday night on the side of the road near where the traffic violation took place. The total time of the stop and search was only between twenty and thirty minutes. Testimony at the motion to suppress hearing indicates that there were four officers present at various times, including Corporal Stafford, Officer Cook, Officer Reddish, and Corporal Roberts, although only Corporal Stafford actually assisted with the search. In short, there is nothing to indicate that the officer's conduct, the duration, location, time of the encounter, or number of officers present gave rise to consent that was not knowing and voluntary.

ii. The Search of Mrs. Sandreth's Purse

The next issue is whether the evidence recovered form Mrs. Sandreth's purse must be excluded under the Fourth Amendment. In order for the Fourth Amendment to be implicated, an individual must have a "reasonable expectation of privacy" in the place that was searched. <u>Rakas v. Illinois</u>, 439 U.S. 128, 143 (1978). The Supreme Court has ruled that in determining whether a person has a reasonable expectation of privacy in the property held by another, courts should consider whether he claims an ownership or possessory interest in the property and whether he has the right to exclude others from the property. <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 105-06 (1980). The burden rests with the defendant to demonstrate that he had a legitimate expectation of privacy in the invaded place. <u>United States v. Bullard</u>, 645, F.3d 237, 242 (4th Cir. 2011).

In this case, Defendant has not provided any facts or information to demonstrate that he had an ownership or possessory interest in her purse, nor did he demonstrate he had the right to exclude others from her purse. In addition, the Supreme Court and the Fourth Circuit have been reluctant to find that one has a possessory interest in another's purse. In <u>Rawlings v. Kentucky</u> the Supreme Court ruled that the defendant did not have standing to challenge the search of a companion's purse when he did not have a right to access the contents. 448 U.S. 98 (1980). In <u>United States v. Rusher</u>, 966 F.2d 868, 875 (4th Cir. 1992), the Fourth Circuit held that the Defendant had no legitimate expectation of privacy in his wife's purse. Accordingly, this Court finds that Defendant had no privacy interest in his wife's purse and therefore has no standing to challenge the search.

iii.    Statements made to Law Enforcement Officers on March 30, 2011

The third suppression issue raised by Defendant is whether the statements he made to law enforcement officers on March 30, 2011 must be excluded. When a question arises as to

"whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment to the [C]onstitution of the United States commanding that no person 'shall be compelled in any criminal case to be a witness against himself.'" Malloy v. Hogan, 378 U.S. 1, 7 (1964)(quoting Bram v. United States, 168 U.S. 532, 542 (1897)). A statement is involuntary under the Fifth Amendment only if it is involuntary within the meaning of the Due Process Clause. See Oreon v. Elstad, 470 U.S. 298, 304 (1985). To determine whether a statement is involuntary under the Due Process Clause, courts take a totality of the circumstances approach, and consider such factors as the characteristics of the defendant, the setting of the interview, and the details of the interrogation. United States v. Pelton, 835 F.2d 1067, 1071 (4th Cir. 1987); accord Ferguson v. Boyd, 566 F.2d 873, 877 (4th Cir. 1977)(holding that a finding of coercion must be based on a consideration of the totality of the circumstances).

    Here, there is no evidence that Defendant's will was overborne or that his capacity for self-determination was impaired. See United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997). Testimony from the Motion to Suppress hearing indicates that Defendant wanted to know what was going on and why his house was being searched. As a result, Agents Hoover and Motte sat down with him at the dining room table in his residence for between fifteen and twenty minutes and told him that the current search stemmed from the search of his car and subsequent arrest back in February 2011. The officers again informed him that he was not under arrest and was free to leave at any time. Trooper Motte also testified that they chitchatted about other things, like the trouble his son had recently gotten into, his past military service, and his recent marriage. Hr'g. Tr. ___. He also asked whether the Defendant had any questions, and when Defendant stated that he did not, he told him he could contact him with any questions he had.

11

Hr'g Tr. ___. Trooper Mott also testified that he never made any threats or promises to him, that he never unholstered his firearm during the conversation, that none of the other officers showed their firearms in any threatening way, and that none of the officers raised their voices to him. Hr'g. Tr. ___. He further testified that Defendant appeared calm although he was distraught over the circumstances. Although there were three or four cars at the residence and between six and seven officers, and although the officers all wore signs that they were law enforcement, the Court finds that a number of officers and the various law enforcement insignia is not be enough to overcome Defendant's will and render his statements involuntary.

In addition, Defendant argues that he should have been given a "cautionary warning" so that he could determine whether to waive his Fifth Amendment protection, especially if the officers were asking him questions because they "needed a certain piece of evidence which was not then in their possession, but which they could obtain from the defendant." Def's Mot. Suppress at 9. However, officers are only bound to give a defendant the substance of his Miranda warnings when he has been placed in custody. A defendant is in custody if under the totality of circumstances the "suspect's freedom of action is curtailed to a degree associated with arrest." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). In this case, Defendant was advised that he was not under arrest. The questioning also occurred at a table in his residence, and many courts have found this indicates a non-custodial environment. See Oregon v. Elstad, 470 U.S. 298, 315 (1985) (finding the suspect was not in custody where the interview took place in the living while the suspect's mother was in the kitchen); United States v. Hargrove, 625 F.3d 170, 178 (4th Cir. 2010) (finding the suspect was not in custody where he was interviewed in a "comfortable atmosphere" at his kitchen table). Given the totality of the circumstances in the present case, this

Court finds the Defendant was not placed in custody.

iv.     Items Seized in the Search of Defendant's Residence on March 30, 2011

Finally, the Defendant contends that the items seized during the search of his premises on March 30, 2011 should be suppressed because they are "fruit of the poisonous tree." Def's Mot. Supp. 10. The exclusionary rule, first developed in Weeks v. United States, 232 U.S. 383 (1914) and Mapp v. Ohio, 367 U.S. 643 (1961) requires the exclusion of any evidence sized from a defendant in violation of the Fourth Amendment. Alderman v. United States, 394 U.S. 165 (1969). In addition, the rule requires that the fruits of such evidence, meaning the derivative evidence that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, must be excluded. Murray v. United States, 487 U.S. 533, 536-37 (1988).

In this case, there is no "fruit of the poisonous tree." As already addressed above, the February 19, 2011 stop and search of Defendant's vehicle and his wife's purse did not violate Defendant's Fourth Amendment rights, and, therefore, statements by Agent Price about the events of February 19, 2011 were properly included in the search warrant affidavit. Accordingly, the application for the search was proper and the warrant was properly issued. The "fruit of the poisonous tree doctrine" thus does not apply to the instant issue.

C.     Recommendation

I recommend Defendant's Motion to Suppress be **DENIED**.

Defendant's Motion to Suppress should be **DENIED** as to the statements made by Defendant to police officers on February 19, 2011 because the officers obtained valid consent to conduct a search of his vehicle.

13

Defendant's Motion to Suppress should be **<u>DENIED</u>** as to the search of his wife's purse on February 19, 2011 because Defendant has no privacy interest in the purse and thus lacks standing under the Fourth Amendment to challenge the search.

Defendant's Motion to Suppress should be **<u>DENIED</u>** as to statements made by Defendant on March 30, 2011 because Defendant's statements were not involuntary nor was he is custody at the time.

Defendant's Motion to Suppress should be **<u>DENIED</u>** as to the evidence seized in the search of Defendant's premises on March 30, 2011 because the "fruit of the poisonous tree" doctrine is not implicated because the application for the search warrant was proper.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days of the date of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: September 21, 2011

<pre>                                        /s/ James E. Seibert
                                        JAMES E. SEIBERT
                                        UNITED STATES MAGISTRATE JUDGE</pre>