IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                          Criminal Action No. 5:11CR31
                                       (STAMP)
GREGORY LYNN SANDRETH,

      Defendant.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORTS AND
RECOMMENDATIONS OF MAGISTRATE JUDGE**

I.  Procedural History

The defendant was indicted on August 1, 2011 in a two-count indictment which charged him with one count of unlawful possession of a firearm by a drug user in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) and one count of making a false statement during the purchase of a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). The defendant was then arraigned by United States Magistrate Judge James E. Seibert on August 18, 2011. On September 8, 2011, the defendant filed the instant motion to suppress four separate pieces of evidence as improperly obtained: (1) statements made by the defendant to police officers during a traffic stop on February 19, 2011; (2) evidence recovered as a result of a search of the defendant's purse during this traffic stop; (3) statements made by the defendant to law enforcement on March 30, 2011 during the execution of a search warrant on his home; and (4) items seized as a result of the execution of the search warrant on March 30,

2011.  The United States filed a response in opposition to this motion, arguing that all challenged statements were voluntarily given and the challenged evidence was seized either by consent or by a lawfully issued warrant.

Magistrate Judge Seibert held a suppression hearing on the defendant's motion, during which the magistrate judge heard testimony from multiple law enforcement officers who participated in either the traffic stop of February 19, 2011 or the March 30, 2011 execution of the search warrant obtained as a result of the traffic stop.  Following this hearing, the magistrate judge issued a report and recommendation recommending that this Court deny the defendant's motion to suppress with regard to all pieces of evidence sought to be suppressed.  Following the issuance of this report and recommendation, the defendant filed objections to the same and the United States timely responded to these objections.

On October 4, 2011, the defendant filed a motion to reopen the suppression hearing, averring that the defendant informed defense counsel that he was allegedly handcuffed when he made the contested statements to police officers during the traffic stop of February 19, 2011.  The motion to reopen was granted by this Court, and another suppression hearing was held, following which the magistrate judge issued a second report and recommendation, again recommending that this Court deny the defendant's motion to suppress in its entirety.  The findings in this report and

recommendation were based upon the magistrate judge's determination as fact-finder that the testimony of the defendant's wife was not credible when compared with the contradictory statements of the law enforcement officers who had conducted the traffic stop and ensuing search of the defendant's vehicle. The defendant filed objections to this second report and recommendation. This Court now affirms and adopts both reports and recommendations issued by the magistrate judge.

## II.  Facts

West Virginia State Police Corporal L.M. Roberts was contacted on his personal cellular phone by ATF Special Agent Ted Hoover on February 19, 2011 and informed that a birthday party connected to the Barbarian Motorcycle Club was being held that evening at a club in downtown Weirton, West Virginia known as Rumorz. He further informed Corporal Roberts that the owner of a maroon-colored truck that he wanted to identify as a member of the Barbarians would be in attendance. Corporal Roberts was in the area of the suspected birthday party when he was informed that the truck in question was leaving the parking lot.

After witnessing the truck, which was being driven by the defendant's wife, Virginia Sandreth, make an illegal left turn onto West Virginia Route 2, Corporal Roberts turned his vehicle around to follow the truck, then activated his emergency lights and initiated a traffic stop. Corporal Roberts approached the vehicle,

verified Mrs. Sandreth's license and the registration of the truck, then asked Mrs. Sandreth to exit the vehicle where he issued her a warning for the traffic violation. Corporal Roberts then asked Mrs. Sandreth if there were any drugs or weapons in the vehicle and whether he could search it, to which she responded that there were no drugs or weapons and that he was free to search, but explained that the truck belonged to her husband, the defendant, who was in the passenger seat. Following the receipt of this information, Corporal Roberts approached the passenger side of the vehicle and asked the defendant for his consent to search it. Consent was given. Corporal Roberts then requested that the defendant step out of the vehicle and stand on the sidewalk with his wife and two Weirton police officers who had recently arrived at the scene to render aid to Corporal Roberts. As the defendant exited the vehicle, Corporal Roberts noticed two knives affixed to the defendant's belt, one of which was positioned at his back, parallel to his waistline. At the discovery of the knives, the defendant now contends that he was immediately handcuffed by Corporal Roberts and remained in this restrained state throughout the search of the vehicle.

At this time, West Virginia State Police Corporal Stafford heard about the stop over the radio and stopped to investigate whether Corporal Roberts was in need of aid. Seeing that a search of the vehicle was about to take place, Corporal Stafford

approached the traffic stop in order to help with the search. In addition to the knives discovered on the defendant's person, Corporal Roberts found a "one hitter pipe" in the pocket of the defendant's vest. At the discovery of the pipe, the defendant admitted that it was his and advised Corporal Roberts that there was cocaine in his vest pocket, but the officers were unsuccessful in locating any cocaine. Eventually, Corporal Stafford located Mrs. Sandreth's purse in the middle bucket seat area of the truck and searched it. Inside the purse, a clear vial with white powdery residue that was later identified as cocaine was discovered. The defendant informed the officers present that the vial belonged to him. As a result of the discoveries during the search of the car, the defendant was arrested and charged with possession of a controlled substance and carrying a concealed deadly weapon.

Following the traffic stop of February 19, 2011, ATF agents obtained a search warrant for defendant's residence. Prior to executing the search warrant, officers approached the defendant at the American Legion in Follansbee, West Virginia where a local officer went inside and asked the defendant to step outside. Once outside, officers involved with the execution of the search warrant explained that they intended to execute that warrant on the defendant's residence, and requested that he accompany them as they conducted the search. The defendant agreed and returned to his residence, where he let officers inside with his key. Once inside

the residence, the defendant sat down at his kitchen table with Task Force Officer Timothy Motte and ATF Special Agent Hoover because Mr. Sandreth desired to discuss what was going on. During the discussion between Mr. Sandreth and the two officers downstairs, there were six or seven officers conducting the search of the residence and at least one local police officer stationed outside the home. During the search and the discussion with Mr. Sandreth, all of the officers were identified as law enforcement in some capacity, and at least one was uniformed. The search uncovered three firearms and various drug paraphernalia present in the home.

During the search, Mr. Sandreth remained at the dining room table with Agents Hoover and Motte and was informed that the search stemmed from the traffic stop of February 19, 2011. The officers repeatedly informed Mr. Sandreth that he was not under arrest and was free to leave at any time. The discussion between the officers and the defendant, which ranged in topics between the search of the home and Mr. Sandreth's drug use to the recent difficulties that Mr. Sandreth had been encountering with his teenaged son, lasted between 15 and 20 minutes. Mr. Sandreth admitted to use of cocaine and marijuana during the discussion, and admitted to possessing drug paraphernalia in his residence, which was recovered during the search.

### III.  Applicable Law

Under the Federal Magistrate's Act, 28 U.S.C. § 636(b)(1)(B), a magistrate judge may be designated by a district court to consider motions to suppress evidence as unconstitutionally obtained.  After the magistrate judge has considered such a motion, he must submit '"proposed findings of fact and recommendations for the disposition.'"  <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983).  Parties are entitled to file written objections to the findings and recommendations of the magistrate judge, and if a party chooses to object within the fourteen day period allotted by the Act, the district court shall make a de novo review of the findings and recommendations objected to.  <u>Id.</u> and 28 U.S.C. § 636(b)(1)(C).  Any findings to which no party objects are upheld by the district court unless "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(C).

Here, the defendant filed objections to both of the magistrate judge's report and recommendations and all findings challenged by these objections will be reviewed de novo.  However, all findings in the reports that are not addressed by the defendant's objections will be reviewed under the "clearly erroneous or contrary to law" standard.  28 U.S.C. § 636(b)(1)(A).

## IV. Discussion

### A. Statements Given to Police During February 19, 2011 Traffic Stop

The defendant maintains that the statements that he made to troopers during the traffic stop on February 19, 2011 should be suppressed because the traffic stop was without reasonable suspicion that illegal activity was afoot, as was the expansion of the stop to a search of his vehicle. Additionally, Mr. Sandreth argues that his consent to the search was not voluntary and his statements were elicited in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), because he was not free to go at the time the statements were given, and he was not warned of the possible repercussions of his admissions at the time.

Magistrate Judge Seibert found that the stop and the extension of it to search the Sandreths' vehicle were appropriate under the Fourth Amendment and that suppression was not warranted based upon a unreasonable search and seizure. The defendant challenged this finding, arguing that the reasons for stopping the vehicle were pretextual and the request to search the car was without reasonable suspicion of wrongdoing. After a de novo review of the applicable law and the record of this case, this Court agrees with the magistrate judge and affirms his recommendation that suppression be denied on the basis of a violation of the Fourth Amendment in the traffic stop.

While the Court agrees with the defendant, as did the magistrate judge, that the traffic stop itself was a seizure, and the search of the car and subsequent recovery of drugs and drug paraphernalia were unquestionably searches and seizures, the bases for these were all legal. See Whren v. United States, 517 U.S. 806, 809 (1996) (the Fourth Amendment protects "against unreasonable searches and seizures" and even "[t]emporary detentions of individuals during the stop of an automobile . . . constitutes a 'seizure.'"). Corporal Roberts testified, and the defendant does not contest that Mrs. Sandreth made an illegal left turn which lead to the traffic stop. However, the defendant maintains that the illegal left turn being the basis for the stop was simply a pretext for the Corporal's real motivation for stopping the vehicle, which was to identify Mr. Sandreth as a member of the Barbarians motorcycle club.

While it may be entirely true that Corporal Roberts only stopped the defendant that evening so that he could follow up on the telephone call that he received from ATF Special Agent Hoover inquiring about Mr. Sandreth's connection to the Barbarians, the fact that Corporal Roberts clearly witnessed Mrs. Sandreth commit a traffic violation makes any underlying motive for stopping the car irrelevant. The United States Court of Appeals for the Fourth Circuit has determined that a law enforcement officer has authority under the Fourth Amendment to stop any vehicle when any objective

right to stop said vehicle exists, regardless of the officer's subjective motivation for the stop, and the seizure of any evidence that may result from such a stop will not be suppressed because the reason for the stop may have been pretextual. <u>United States v. Hassan El</u>, 5 F.3d 726, 730 (4th Cir. 1993).

However, notwithstanding the finding that the traffic stop was permissible under the Fourth Amendment, the defendant also argues that the extension of the stop and the request to search the vehicle were wholly without reasonable suspicion. The defendant maintains that the search of the vehicle was illegal on these grounds. Again, this Court agrees with the magistrate judge and reaches the opposite conclusion.

The Fourth Amendment allows law enforcement to detain a properly stopped vehicle for "as long as it takes to perform the traditional incidents of a routine traffic stop" and to "ask questions unrelated to the purpose of the stop, provided that the unrelated questioning does not extend the encounter beyond the period reasonably necessary to effectuate the purposes of the lawful detention." <u>United States v. Branch</u>, 537 F.3d 328, 335 (4th Cir. 2008); <u>United States v. Digiovanni</u>, No. 10-4417, 2011 WL 3000496, at *6 (4th Cir. July 25, 2011)(internal quotation omitted). In this case, Corporal Roberts asked Mrs. Sandreth whether there were drugs or weapons in the vehicle and procured her consent to search the vehicle immediately following the issuance of

the traffic citation.  Additionally, after initiating the stop,
Corporal Roberts immediately approached the vehicle, and did
nothing to delay the process of a normal traffic stop.  Thus, "the
unrelated questioning" process which led to consent to search the
Sandreths' vehicle was likewise legal.

The defendant cites <u>Digiovanni</u> to support his contention that
the extension of the stop in order to obtain consent to search in
this case was improper.  However, the defendant overlooks the
significant factual differences between <u>Digiovanni</u> and this case.
In <u>Digiovanni</u>, the officer conducting the traffic stop conducted
unrelated questioning of the defendant without reasonable suspicion
of illegal activity for nearly ten minutes without checking the
defendant's driver's license, and without finding anything that
would give rise to reasonable suspicion of wrongdoing.  <u>Id.</u> at *1-
5.  <u>After finding nothing in a search of the defendant's car</u>, over
ten minutes into the traffic stop, the officer told Digiovanni that
his license check was not yet complete, then nearly fifteen-minutes
into the stop he wrote him a warning and told him he was free to
go.  However, before Digiovanni was able to leave, he requested
consent to search the car for a second time to which written
consent was given nearly twenty minutes into the traffic stop and
drugs were eventually discovered.  <u>Id.</u> at *7.

This brief synopsis of the facts in <u>Digiovanni</u> that led the
Fourth Circuit to find that the search was not permissible makes

obvious the basis for the opposite finding in this case. Corporal Roberts did not delay the process of the traffic stop in order to secure consent to search the vehicle, nor did he persist in delaying the detention when an initial search yielded nothing. He immediately checked Mrs. Sandreth's license and wrote her a warning ticket. The additional questioning that elicited consent to search the vehicle lasted mere moments beyond the regular business of the traffic stop, then after the search had begun, it lasted no longer than was necessary to make a single search of the truck.

Further, this Court agrees with the magistrate judge that the consent to search the truck was voluntarily given. The search of the defendant's truck was conducted without a warrant, and so it must fall into one of the warrant requirement exceptions in order to be valid. United States v. Stevenson, 396 F.3d 538 (4th Cir. 2005). One specific exception that makes a warrantless search "reasonable" under the Fourth Amendment is valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The defendant claims that the totality of the circumstances surrounding his consent lends itself to the conclusion that the consent was not valid in this case because it was not voluntarily given. United States v. Mendenhall, 446 U.S. 544, 557 (1980) ("The question whether the respondent's consent . . . was in fact voluntary or was the product of duress or coercion, express or implied, is to be determined by the totality of the circumstances."). This Court's

independent evaluation of both the magistrate judge's report and of all parties' descriptions of the situation under which Mr. Sandreth gave Corporal Roberts consent to search his vehicle leads to a conclusion that the situation did not become objectively coercive to the point that a reasonable person would have felt compelled to give consent, nor was the situation such that Mr. Sandreth subjectively would have felt compelled to consent.

Finally, with regard to the statements made by the defendant to police while the search of his vehicle was taking place, the defendant now argues that he was in handcuffs and thus was in custody when the statements were made, and that he did not receive <u>Miranda</u> warnings beforehand. Magistrate Judge Seibert listened to testimony on this issue from both Corporal Roberts and Stafford, as well as from Mrs. Sandreth, who testified that Mr. Sandreth was handcuffed throughout the search. The magistrate judge then gave a detailed and thorough explanation in his second report and recommendation of his determination that credibility should be given to the testimony of the officers rather than to Mrs. Sandreth. The defendant filed objections challenging the bases for the magistrate judge's credibility determination. In these objections, the defendant argues that the testifying officers have not been entirely consistent in their recollection of the facts, and that Mrs. Sandreth is not sufficiently sophisticated in legal knowledge to appreciate the significance of her husband being in

handcuffs, thus would not have a motivation to give this testimony to protect her husband. However, this Court finds that the credibility determination fully explained and rationalized within the magistrate judge's report is sound. The magistrate judge heard live testimony on this matter, and is the only one that can bear on demeanor and all other visual aspects of credibility. Because of this, he is in the best position to judge whether testimony is to be believed, and great deference must be given to his well reasoned determination. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Thus this Court defers to the magistrate judge's determinations in this regard and finds that the defendant was not placed in handcuffs before he made statements to police during the search.

As a result of this finding, and that the defendant was simply standing on the sidewalk with his wife and two Weirton police officers, this Court also finds that the defendant was not in custody at the time that the statements were made, so Miranda does not attach. The procedural rules that must be followed under the mandates of Miranda only attach in situations of "custodial interrogations." United States v. Sullivan, 138 F.3d 126, 130 (4th Cir. 1998). Custodial situations arise under Miranda "either if a person has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." Id.; Stansbury v. California, 511 U.S. 318 (1994). While traffic stops have been

determined to be seizures under the Fourth Amendment, they have not been determined to be "custodial" situations under <u>Miranda</u> without additional facts occurring during the traffic stop that render a defendant in custody. <u>Berkemer v. McCarty</u>, 468 U.S. 420, 436-440 (1984). Here, the facts do not lend themselves to a determination that Mr. Sandreth was ever in custody as he stood on the sidewalk during the search.

B. <u>Evidence Recovered From the Search of Mrs. Sandreth's Purse</u>

The magistrate judge found that Mr. Sandreth does not have standing to challenge the validity of the search of his wife's purse because he had no expectation of privacy in the purse, and so his Fourth Amendment rights were not violated. The defendant did not object to this finding, so it is reviewed for clear error. This Court agrees that the Fourth Amendment only applies to search and seizure in a place where the defendant has a "reasonable expectation of privacy" and that Mr. Sandreth did not have such an expectation in his wife's purse.

C. <u>Statements Made to Police During the Execution of the Warrant on Mr. Sandreth's Residence</u>

Mr. Sandreth also challenges the admissibility of the statements that he gave to police at his dining room table during the execution of the search warrant on his residence on March 30, 2011. He makes these challenges on the grounds that the statements were both coerced and given in violation of <u>Miranda</u>. Again, the

magistrate judge found that the totality of the circumstances surrounding these admissions was not so oppressive or coercive that the admissions could be deemed involuntary, nor was Mr. Sandreth in custody during the conversation with police. This Court agrees with the magistrate judge.

While it is true, as the defendant maintains, that quite a few officers, all of whom wore some identifying clothing at some point during the execution of the warrant, were present in the defendant's home during his conversation with law enforcement officers, the situation was not such that all of the officers were in the same room with the defendant at the same time as officers interrogated him about his criminal behavior. In fact, testimony reveals, and the defendant does not contest, that all but the two officers sitting at the table with the defendant were upstairs for most of the conversation, and that while the defendant was understandably upset as a result of the warrant, the conversation was calm. In fact, it seems clear that at times, the conversation was non-threatening, in a discussion of the defendant's problems with his teenaged son. As the magistrate judge found, this court also finds that the statements given during this discussion were voluntary, and clearly not the result of the defendant's will being overborne or his capacity for self-determination being impaired. United States v. Pelton, 835 F.3d 1067, 1071 (4th Cir. 1987).

Similarly, it seems clear to this Court that the defendant was likewise not in custody when the statements in question were made in his residence. The record shows that law enforcement officers made it clear multiple times that Mr. Sandreth was not under arrest and was free to go if he liked. However, Mr. Sandreth expressed his desire to remain in the residence and to continue to speak with officers during the execution of the warrant. It also seems clear from the record that the purpose of the discussion between Mr. Sandreth and law enforcement officers was not to gain information about Mr. Sandreth's criminal behavior, but rather to give him information about the warrant and to answer questions that he had about what was happening. Further, the very fact that the conversation took place at a table at the defendant's residence cuts against a finding that the defendant was in custody. See Oregon v. Elstad, 470 U.S. 298, 315 (1985); and United States v. Hargrove, 625 F.3d 170, 178 (4th Cir. 2010).

The defendant argues that the officers "should" have informed him of his right to remain silent. While it may have been preferable for him for the police to inform him of this before he spoke to them at all, they were not required to do so by the Fifth Amendment, so the fact that they failed to do so does not make the statements improperly procured.

Finally, the defendant argues that the warrant and the evidence seized under the execution of the warrant should be

excluded because they were only obtained as a result of the traffic stop of February 19, 2011, which defendant argues was illegal. Thus, defendant's argument for suppression of the warrant and evidence seized as a result of it is that they are "fruit of the poisonous tree." However, in order for "fruit of the poisonous tree" to work to exclude evidence, the primary evidence used to obtain probable cause on which to base the warrant must have been seized in violation of the Fourth Amendment. <u>Murray v. United States</u>, 487 U.S. 533, 536-37 (1988). This Court found above that the traffic stop and the subsequent search of defendant's car on February 19, 2011 did not violate the defendant's Fourth Amendment rights, so there is not a "fruit of the poisonous tree" situation and the warrant was legally obtained.

## V. <u>Conclusion</u>

For the reasons stated above, this Court hereby AFFIRMS and ADOPTS in its entirety the magistrate judges' report and recommendation of September 21, 2011 and also AFFIRMS and ADOPTS in its entirety the magistrate judges' report and recommendation of October 11, 2011. Accordingly, the defendant's motion to suppress is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the defendant and to counsel of record herein.

DATED:     October 17, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE